**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

MY HEALTH, INC., a Delaware corporation,

      Plaintiff,

v.

                                        Case No.  15-CV-80

GENERAL ELECTRIC COMPANY, a New
York corporation,

      Defendant.

---

## COMPLAINT

---

Plaintiff My Health, Inc. ("*My Health*" or "*Plaintiff*"), by and through its attorneys, Pia Anderson Dorius Reynard & Moss, makes and files this Complaint against General Electric Company, Inc. ("*GE*" or "*Defendant*").  In support of its Complaint, Plaintiff alleges as follows:

### PARTIES

1.     My Health is a Delaware corporation having a principal place of business in Texas.  My Health is the original and current owner of the Registered Mark (as defined below). All right, title, and interest in and to the Registered Mark, including the right to sue for all past and present infringement damages, resides exclusively with My Health.

2.     GE is a publicly traded corporation organized under the laws of the state of New York, with its principal place of business located at 3135 Easton Turnpike, Fairfield, Connecticut 06828-0001.  GE has used and currently uses the Registered Mark in commerce in this judicial district and throughout the United States.

**JURISDICTION AND VENUE**

3.      This action arises under the trademark laws of the United States. My Health seeks damages for trademark infringement pursuant to the Lanham Trademark Act, 15 U.S.C. § 1114, *et seq*. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.      GE is subject to personal jurisdiction in the State of Wisconsin and this judicial district pursuant to Wis. Stat. § 801.05 and consistent with principles of due process. Since at least as early as July 31, 1911, GE has been conducting business within Wisconsin and this judicial district, including selling and offering goods for sale to consumers in this judicial district.  According to reports released by GE, it "directly and indirectly generates $3.8 [billion] in revenue per year in Wisconsin, contributes to $1.5 billion "in Wisconsin exports," and employs more than 21,000 people within the state.  In addition, GE transacted business, contracted to supply goods or services, and caused injury to Plaintiff within Wisconsin and this judicial district, and has otherwise purposefully availed itself of the privileges and benefits of the laws of Wisconsin and is therefore subject to the jurisdiction of this Court.

5.      GE uses the mark "myHealth" (the "***Accused Mark***") online and/or in physical locations in Wisconsin to be placed on products and packaging to be used, shipped, and sold in this judicial district. GE uses My Health's primary channel of commerce—the Internet—to promote and sell its product and/or services in an attempt to confuse consumers looking for tools related to My Health into thinking that GE is associated with My Health.

6.      GE transmits the Accused Mark into Wisconsin through GE's own website with the intent that it will induce its more than 21,000 Wisconsin employees to use its products and services. *See* http://www.ge.com/myhealth/. GE makes this website available to Wisconsin

residents with the knowledge that such website has caused and continues to cause tortious injury to My Health within Wisconsin and throughout the country. GE targeted Wisconsin residents knowing that by using the Accused Mark they would be enticing thousands of employees within the State to use its services. GE also places the Accused Mark in the stream of commerce with the expectation that the Accused Mark will be used to attract customers and purchasers within this judicial district. GE intentionally targets residents of Wisconsin by maintaining and operating an interactive website featuring the Accused Mark in an attempt to advertise to, sell to, and interacts with residents of Wisconsin and this judicial district. The Accused Mark is associated with products and services almost exclusively available through GE's interactive website, and GE is using the interactive website as its primary channel of commerce to specifically target Wisconsin residents.  GE's knowing and purposeful actions taken toward residents of this judicial district satisfy the requirements of due process and Wisconsin's long-arm statute and thus this court may exercise jurisdiction over Defendant.  Moreover, the Accused Mark has been used in Wisconsin and this judicial district to advertise sales and services to residents of this judicial district.

7.      My Health advertises, offers for sale, and licenses its intellectual property to residents of Wisconsin and has experienced actual harm through dilution of its mark in Wisconsin.

8.      Upon information and belief, customers and potential customers of My Health have experienced actual confusion because of GE's use of the Accused Mark in Wisconsin.

9.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400 because GE has done business, has infringed, and continues to infringe the Registered Mark within this judicial district, and this action arises from the transaction of that business and that infringement.

## GENERAL ALLEGATIONS

10.     Michael E. Eiffert M.D. ("Dr. Eiffert"), the CEO of My Health, worked at the University of Rochester with his colleague, Lisa C. Schwartz, in an effort to create technology solutions in the healthcare industry.

11.     On September 2, 2003, after Dr. Eiffert and Schwartz dedicated years to research in the field of healthcare technology, the University of Rochester was awarded United States Patent No. 6,612,985 (the "'985 Patent") entitled "Method and system for monitoring and treating a patient."

12.     The '985 Patent describes a method that assists healthcare providers in remotely coordinating and updating patient care through emerging technologies.

13.     Dr. Eiffert left the University of Rochester to help market and license the patented technology to healthcare and technology companies searching for better solutions for remote patient monitoring and treatment. Dr. Eiffert carries out this mission as CEO of My Health.

14.     My Health focuses on serving as a pipeline for new technologies, assisting scientists and engineers in bringing their ideas to fruition and, ultimately, to companies with the expertise to market on a global scale.

15.     On May 7, 2008, My Health filed for registration of its mark "My Health" (the "*Registered Mark*"). The mark was subsequently registered on November 10, 2009 as Registration No. 3709669. Attached to this Complaint as **Exhibit A** is a true and correct copy of the Registered Mark.

16.     The Registered Mark is covered under international class 42 in the area of computer software consultancy; computer software design; consultancy in the field of software design; developing computer software.

17.     The Registered Mark is also covered under class 44 in the area of providing an internet website for medical professional and medical patients that allows for the exchange of information from remote locations using devices that feed information to the website that is then processed and can be accessed by real-time users; providing an internet website for medical professionals and medical patients that allows for the exchange of information from remote locations using electronic patient monitoring devices that feed information to the website that can be accessed in real-time by medical professionals for purposes of monitoring and diagnosing medical conditions; providing medical information, consultancy and advisory services.

18.     The Registered Mark was first used in commerce at least as early as April 17, 2008, and has been in continuous use since that time.

19.     On December 3, 2014, the United States Patent and Trademark Office determined that the Registered Mark is incontestable. As such, My Health is the only person or entity entitled to use the Registered Mark "My Health" in commerce.

20.     GE does not hold a license to use the Registered Mark, nor has GE been granted a license or any other rights to the Registered Mark.

21.     Upon information and belief, by incorporating the Accused Mark in its marketing and sales of products and services in violation of My Health's rights, GE has generated significant sales of products and services in the relevant field of (1) scientific and technological services and research and design, and (2) medical services.

22.     My Health has invested substantial time, money, and goodwill in advertising and promoting the Registered Mark in commerce in the healthcare and technological services sectors. As a result, the public in these sectors has come to know and recognize the Registered Mark and associate it exclusively with the services offered by My Health.

23.     GE uses the confusingly similar Accused Mark to market, advertise, promote, and sell its healthcare services online at http://www.ge.com/myhealth/ in order to confuse consumers into thinking that My Health is the source of the goods.  The website invites consumers to "Go to the main U.S. myHealth site," only to redirect them to GE's website.  The website then greets consumers with "Welcome to the myHealth website…" thereby creating the impression that GE's website is run and operated by My Health.  GE's website even markets a "myHealth IQ Health & Wellness Portal," which performs functions and steps confusingly similar to My Health's patented technology.

24.     GE is attempting to use the Accused Mark, which is confusingly similar to the Registered Mark, in order to take advantage of and capitalize on My Health's efforts to market and popularize the Registered Mark.

25.     GE uses the same and substantially similar channels of commerce as My Health. My Health uses the Registered Mark and GE uses the Accused Mark in conjunction with remote monitoring of a patient's condition through the Internet, wireless servers, and web applications.

26.     The similarities between the channels of commerce, the industries served, and the technologies employed for both My Health and GE create widespread confusion with respect to the source of the goods and services offered.

**FIRST CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT**
**LANHAM ACT 15 U.S.C. §§ 1114, 1125**

27.     My Health re-alleges and incorporates by reference the above paragraphs as if set forth in full.

28.     My Health is the owner of the mark "My Health," and is the only entity authorized to use the Registered Mark.

29.     The Registered Mark has been deemed incontestable by the U.S. Patent and Trademark Office and is a strong mark.

30.     My Health has continuously used the mark in commerce since at least April 17, 2008, by marketing and licensing its patented technology to companies in the healthcare and technology industries.

31.     As of the date of the filing of this Complaint, My Health has used the Registered Mark in commerce by, among other things, licensing its patented intellectual property to more than forty healthcare and technology companies, including hospital systems, healthcare technology companies, and well-recognized telecommunications companies.

32.     My Health has established a strong reputation because licensees and users of the patented technology recognize its products, services and the Registered Mark in the relevant market as high quality.

33.     People have come to recognize the Registered Mark as identifying the source of My Health's goods.

34.     In the Accused Mark "myHealth," GE uses a confusingly similar mark in appearance and suggestion in conjunction with goods and services offered in the healthcare

technology sector. This use is likely to cause confusion, and upon information and belief, has already caused actual confusion.

35.     GE has used the Accused Mark in reproductions, copies, and colorable imitations and infringed on the mark without My Health's consent in conjunction with the sale, distribution, offering for sale, and/or advertising of services in connection with the mark "My Health." GE's use of the same channels of trade as My Health has and is likely to cause confusion, mistake, or deceive consumers as the source, origin, nature, or quality of those services in connection with the health care industry.

36.     Upon information and belief, potential My Health licensees and customers have found GE's products because of GE's misappropriation of My Health's Registered Mark and have confused GE's offerings with My Health's offerings.

37.     GE has made and continues to make false and misleading statements related to its myHealth portal that is meant to confuse consumers into thinking that My Health is the source of the goods. For example, GE entices consumers to "Go to the main U.S. myHealth site" only to redirect consumers to GE's website. This website then greets consumers with "Welcome to the myHealth website…" which causes confusion and creates the misimpression that GE's website is run and operated by My Health. GE even markets a "myHealth IQ Health & Wellness Portal" that performs steps confusingly similar to My Health's patented technology.

38.     These misleading statements have led to actual deception and will likely deceive more potential customers of My Health.

39.     This deception is material because it is likely to influence purchasing decisions of My Health's potential licensees by causing them to believe that GE is the source of the intellectual property portfolio and services provided by My Health.

40.     The advertised goods and services travel through interstate commerce through GE's interactive website.

41.     My Health has a protected ownership interest in the Registered Mark.

42.     GE's use of its competing "myHealth" mark is likely to cause consumer confusion in light of (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) actual confusion; and (7) the intent to "palm off" products or services.

43.     GE's use infringes upon My Health's trademark rights. Lanham Act, §§ 32, 43(a), 15 U.S.C.A. §§ 1114, 1125(a).

44.     GE caused damage to My Health's business, reputation, and goodwill; there is a likelihood of confusion, and therefore My Health is entitled to injunctive relief and damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ADVERTISING
## LANHAM ACT 15 U.S.C. § 1125(A)

55.     My Health re-alleges and incorporates by reference the above paragraphs as if set forth in full.

56.     My Health has a protectable interest in the Registered Mark.

57.     GE has used the Accused Mark, which is identical or similar to Plaintiff's Registered Mark, in commerce.

58.     GE's use of the Accused Mark is likely to confuse consumers.

59.     My Health has suffered and will continue to suffer a loss in its commercial interest in sales or business reputation.  This loss is and will continue to be proximately caused

by GE's misrepresentations made through its unauthorized use of the Accused Mark in commerce.

60.     My Health is entitled to injunctive relief and damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT**
**VIOLATION OF WIS. STAT. § 132.033(1)**

74.     My Health re-alleges and incorporates by this reference the above paragraphs as if fully set forth herein.

75.     My Health is the owner of the incontestable Registered Mark.

76.     GE uses and displays a counterfeit mark myHealth that is substantially identical to My Health's Registered Mark, such that GE's use of the counterfeit mark is substantially indistinguishable from the Registered Mark.

77.     The counterfeit mark is exactly the same as the Registered Mark except for variations in capitalization and the lack of a space, which neither together nor separately changes the meaning of the mark.

78.     My Health is entitled to injunctive relief and damages in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**COMMON LAW TRADEMARK INFRINGEMENT**

79.     My Health re-alleges and incorporates by reference the above paragraphs as if set forth in full.

80.     My Health has established a strong reputation, recognition, and notoriety in the relevant markets by successfully marketing and licensing its intellectual property to more than two-dozen notable healthcare providers.

81.     Because of My Health's efforts in establishing its reputation, My Health's Registered Mark "My Health" has achieved secondary meaning in the relevant health care and technology markets.

82.     The Registered Mark is a valid registered trademark that is owned by My Health.

83.     GE uses a confusingly similar mark that is nearly identical to My Health's Registered Mark, which is creating confusion in the marketplace.

84.     GE's conduct in using My Health's name and mark in advertising, promotional materials, and in connection with its business will irreparably harm and continue to create confusion among consumers of healthcare and technology regarding which entity offers the licensing of the '985 Patent.

85.     GE's use of the name and mark has violated My Health's exclusive rights in the name and mark.

86.     My Health has suffered irreparable damages caused by GE's infringement of the Registered Mark and is entitled to (a) an injunction which enjoins GE from infringing and using the mark "My Health" or confusingly similar marks in connection with its business and (b) damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF WISCONSIN UNFAIR COMPETITION**

87.     My Health re-alleges and incorporates by reference the above paragraphs as if set forth in full.

88.     GE has adopted and used its "myHealth" mark for the purposes of trading on the goodwill represented by the Registered Mark and to give GE an ability to sell its products in the marketplace that it would otherwise not have.

89.     GE's use of the Registered Mark has caused and is likely to continue to cause confusion, mistake, or deception on behalf of the consuming public as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the source, approval, or sponsorship of GE's product offerings by My Health.

90.     GE's actions have enabled it and others to misrepresent and deceptively advertise, merchandise, market, and promote its products as sponsored, endorsed, or emanating from My Health or as legitimately connected with or authorized by My Health.

91.     GE's actions constitute methods of unfair competition.

92.     GE's use of its "myHealth" mark invades the property rights of My Health, which have commercial value.

93.     GE's use of its "myHealth" mark constitutes an unfair invasion or infringement and is a form of commercial immorality.

94.     GE's intentional actions are unlawful, fraudulent, and have led to the material diminution in value of My Health's intellectual property and involved the infringement of My Health's Registered Mark.

95.     GE's conduct has damaged My Health by unfair competition in an amount to be proven at trial.

96.     My Health has suffered irreparable harm and damages caused by GE's infringement of the Registered Mark and use of the Accused Mark. Because of these damages, My Health is entitled to: (a) an injunction which enjoins GE from infringing and using the term "My Health" or confusingly similar marks in connection with its business; and (b) damages in an amount to be proven at a trial in this matter, but in no event less than statutory damages.

WHEREFORE, Plaintiff My Health, Inc. respectfully requests judgment against Defendant General Electric Company, Inc. as follows:

A.     Entry of final judgment in favor of Plaintiff and against Defendant;

B.     An award of actual damages adequate to compensate Plaintiff for the infringement that has occurred;

C.     Statutory damages;

D.     Disgorgement of profits;

E.     Treble damages as provided for in light of the knowing, willful, and intentional nature of Defendant's acts;

F.     Awarding Plaintiff its costs and expenses of this litigation, including its reasonable attorneys' fees and disbursements;

G.     An injunction permanently prohibiting Defendant and all persons in active concert or participation with any of them from further acts of infringement; and

H.     Such other further relief that Plaintiff is entitled to under the law, and any other and further relief that this Court or a jury may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims and issues so triable.

DATED this 10th day of February, 2015.

                                    PIA ANDERSON DORIUS REYNARD &
                                    MOSS


                                    /s/ *Mark M. Leitner*
                                    Mark M. Leitner
                                    Joseph S. Goode
                                    Jessica L. Farley
                                    400 North Broadway
                                    Suite 303
                                    Milwaukee, WI  53202
                                    Telephone: (414) 792-9667
                                    Facsimile:  (801) 350-9010
                                    mleitner@padrm.com
                                    jgoode@padrm.com
                                    jfarley@padrm.com
                                    ***Attorneys for Plaintiffs***


Of Counsel (*Pending Pro Hac Vice Admissions*):

Joseph G. Pia
Brett I. Johnson
Sara E. Payne
Pia Anderson Dorius Reynard & Moss
222 S. Main Street.
Suite 1830
Salt Lake City, UT 84101
Telephone: (801) 350-9000
Facsimile:  (801) 350-9010
joe.pia@padrm.com
bjohnson@padrm.com
spayne@padrm.com