**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

MY HEALTH, INC., a Delaware corporation,

                             Plaintiff,

v.                                       Case No. 15-CV-80

GENERAL ELECTRIC COMPANY, a New
York corporation,

                            Defendant.

---

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

---

Defendant General Electric Company ("GE"), by and through its undersigned counsel, respectfully submits this brief in support of its Motion To Dismiss Pursuant To Rule 12(b)(6).

By its Complaint (Docket No. 1), Plaintiff My Health, Inc. ("MHI") purports to assert claims of trademark infringement and false advertising under the Lanham Act and coordinate state laws based on GE's use of the designation "myHealth" on a GE web site that provides health and benefits information to GE employees, retirees, and their dependents. The Complaint fails to allege sufficient factual content to allow the Court plausibly to infer either (1) that MHI has protectable trademark rights as against GE, or (2) that GE's use is likely to cause confusion among consumers. The absence of these essential elements is fatal to MHI's claims under any of its asserted legal theories.

## STATEMENT OF FACTS

For purposes of a motion under Rule 12(b)(6), the well-pleaded facts in the Complaint are presumed to be true. *See infra* at 3-4. GE therefore provides the following summary of the facts alleged in the Complaint without conceding their truth, accuracy or completeness. Should

any of MHI's claims survive dismissal, GE will dispute many of MHI's factual allegations.

MHI describes its business as "serving as a pipeline for new technologies, assisting scientists and engineers in bringing their ideas to fruition and, ultimately, to companies with the expertise to market on a global scale."  Complaint ¶ 14.  It alleges that it applied to register the mark "My Health" on May 7, 2008, *id.* ¶ 15, based on a claimed first use date of April 17, 2008. *Id.* ¶ 18.  While MHI asserts that the mark "has been in continuous use since that time," *id.*, the Complaint provides virtually no specifics as to any goods or services on which the mark has actually been used as a trademark.  The closest MHI comes to such an allegation is the claim that it has "continuously used the mark in commerce since at least April 17, 2008, by marketing and licensing its patented technology to companies in the healthcare and technology industries," *id.* ¶ 30, and the similar allegation that as of the date of the Complaint, MHI has used the mark by "licensing its patented intellectual property to more than forty healthcare and technology companies, including hospital systems, healthcare technology companies, and well-recognized telecommunications companies."  *Id.* ¶ 31.

With respect to the allegedly infringing use, the Complaint identifies the term "myHealth" as the "Accused Mark."  Complaint ¶ 5.  GE is said to use this term "to market, advertise, promote, and sell its healthcare services online at http://www.ge.com/myhealth/."  *Id.* ¶ 23.  There are few specifics as to particular goods or services GE is claimed to be offering under the mark, but the primary concern appears to be GE's reference to this site as "the myHealth website," which is said to create "the impression that GE's website is run and operated by" MHI. *Id.*  See also *id.* ¶ 37, making nearly identical allegations.  Otherwise, there are simply repeated generalized references to "products and services" purportedly available "through GE's interactive website," *id.* ¶ 6, or to GE supposedly generating of sales of "products and services in

the relevant field of (1) scientific and technological services and research and design, and (2) medical services," *id.* ¶ 21, or to GE's use of the term "in conjunction with goods and services offered in the healthcare technology sector." *Id.* ¶ 34.

There is no allegation as to when GE's use of the "Accused Mark" commenced, nor any allegation that MHI's alleged use was senior or prior in time to GE's alleged use.

## ARGUMENT

### I.      STANDARDS UNDER RULE 12(b)(6)

The Seventh Circuit has summarized the standards under the Supreme Court's *Twombly* and *Iqbal* jurisprudence as follows:

> We review a 12(b)(6) dismissal for failure to state a claim *de novo* and construe all well-pleaded facts and draw all inferences in the light most favorable to the nonmoving party.  *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).  In order to survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). And while we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions or recital of the elements of a cause of action "supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

*Vesely v. Armslist LLC*, 762 F.3d 661, 664-65 (7th Cir. 2014).  Under this "plausibility" standard, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level.' *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.  That is, the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief.  *Id*. at 557, 127 S.Ct. 1955." *Alam*, 709 F.3d at 666.

In deciding a 12(b)(6) motion, courts "are free to consider 'any facts set forth in the [complaint] that undermine the [plaintiff's] claim.'"  *Era Franchise Sys., LLC v. Hoppens Realty,*

*Inc.*, No. 12-cv-594-slc, 2013 U.S. Dist. LEXIS 107078 at *13 (W.D. Wis. July 31, 2013), *quoting Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992), *quoting in turn R.J.R. Services Inc. v. Aetna Casualty & Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1989). In addition, the Court may consider "documents referenced in the pleading that are central to the claim." *Era Franchise Sys.*, 2013 U.S. Dist. LEXIS 107078 at *13, *citing Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013), *and Citadel Group Ltd. v. Washington Reg. Med. Center*, 692 F.3d 580, 591 (7th Cir. 2012). Finally, the Court "may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment." *Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998)(citing cases).

Applying the above standards, the Complaint in this case does not articulate a plausible factual basis sufficient to state a claim under any of the legal theories asserted.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT

"To prevail on a Lanham Act claim, a plaintiff must establish that (1) [its] mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Both elements are absent here.

### A.   The Complaint Does Not Allege A Sufficient Basis To Find That MHI's Mark Is Protectable Against GE

As noted *supra* at 3, the Complaint does not allege when GE's purportedly infringing use commenced, nor does it assert that MHI's use of its claimed mark commenced prior to the use by GE. This is not an incidental oversight. The Complaint repeatedly references GE's web site at http://www.ge.com/myhealth as the sole vehicle of alleged infringement, and even quotes from the site. Complaint ¶ 23. The "Wayback Machine" maintained by the non-profit Internet

Archive documents that GE's web site using the "myHealth" designation was posted online at least as early as November 25, 2005.  *See* Declaration of Rodrick J. Enns and pages attached thereto, filed contemporaneously herewith.

Copies of pages from GE's site as archived by the Internet Archive are properly considered on this motion because the GE site is expressly referenced and quoted in the Complaint, and is central to MHI's infringement allegations.  *See* cases cited *supra* at 4.  In addition, Internet Archive records are an appropriate subject for judicial notice under F.R.E. 201. *See, e.g., Pond Guy, Inc. v. Aquascape Designs, Inc.*, No.13-13229, 2014 U.S. Dist. LEXIS 85504 at *9-10 (E.D. Mich. June 24, 2014)("As a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for the taking of judicial notice."); *Martins v. 3PD, Inc.*, No. 11-11313-DPW, 2013 U.S. Dist. LEXIS 45753 at *47 (D. Mass. Mar. 28, 2013)(proper to take "judicial notice of the various historical versions of the [defendant's] website available on the Internet Archive at Archive.org as facts readily determinable by resort to a source whose accuracy cannot reasonably be questioned").

Priority of use is fundamental to the existence of enforceable trademark rights.  As this Court has explained,

> [T]o demonstrate ownership in a protectible trademark, a party must show both 1) that its use of the mark predated that of others asserting competing rights in the mark and 2) that the mark has been used effectively to designate the party as the source of its product.

*Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*, No. 97-C-155-C, 1998 U.S. Dist. LEXIS 11919 at *39-40 (W.D. Wis. June 24, 1998).  Federal registration changes this only in the sense that filing a federal application "shall constitute constructive use of the mark, conferring a right of priority" as of the application date.  Lanham Act § 7(c), 15 U.S.C. § 1057(c).  Registration

expressly does <u>not</u> confer such a right against a person whose use of the mark commenced "prior to such filing." *Id.* That is precisely the situation here: MHI's application date was in 2008, Complaint ¶ 15, years after GE's use of "myHealth" began in 2005.

The fact that MHI's federal registration has become incontestable pursuant to Lanham Act § 15, 15 U.S.C. § 1065, *see* Complaint ¶ 19, in no way changes this result. Section 15 only confers incontestability "except to the extent, if any, to which the use of [the registered] mark … infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration…." Similarly, Section 33(b), which describes the effect of incontestability, states that an incontestable registration is "conclusive evidence … of the registrant's exclusive right to use the registered mark in commerce," but only "[t]o the extent that the right to use the registered mark has become incontestable under section 15…" Lanham Act § 33(b), 15 U.S.C. § 1115(b). The express purpose of this language, added by amendment in 1989, was to "make[] clear beyond dispute what was widely accepted before 1989: § 33(b) incorporates by reference the exceptions of § 15 as defects defeating incontestable status." 5 J.T. McCarthy, *Trademarks and Unfair Competition* § 26:53 at p. 26-95 (4th ed. rel. 72, 12/2014)("McCarthy").

The net effect of these provisions is that an incontestable registration confers no rights as against one who acquired rights under the common law by use beginning before the priority date of the registration. *See, e.g., Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 731 (8th Cir. 1978)("The plain meaning of this language is that if a party has acquired common-law trademark rights continuing since before the publication of the federal registration, then to that extent the registration will not be incontestable."); *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 979 (9th Cir. 2006)("Neither the registration nor the incontestable status of the

[plaintiff's] mark" affects defendant's rights in a mark "acquired through use in the marketplace" prior to the registration); 5 McCarthy § 26:53 at pp. 26-96 and 26-97 (§ 15 "preserves the common law rights of the senior user," citing numerous cases).  Section 15 preserves the senior user's rights only in the geographic area of use, but if the "senior common law user has already established trademark rights throughout the United States, then the owner of the federal incontestable registration has no rights and the registration is ineffectual."  *Id.* at p. 26-98, *citing Watec Co., Ltd. v. Liu*, 403 F.3d 645 (9th Cir. 2005).

On this record, MHI cannot establish that it owns any trademark rights that are protectable as against GE's prior use, and therefore fails to state a tenable infringement claim.

### B.   The Complaint Does Not Allege A Sufficient Basis To Find Likelihood of Confusion

Allegations about likelihood of confusion are fully subject to the plausibility standard of *Twombly* and *Iqbal*.  *See Fortres Grand Corp. v. Warner Bros. Entertainment Inc.*, 763 F.3d 696, 700 (7th Cir. 2014)("Allegations of consumer confusion in a trademark suit, just like any other allegations in any other suit, cannot save a claim if they are implausible."); *Eastland Music Group, LLC v. Lionsgate Entertainment, Inc.*, 707 F.3d 869, 871 (7th Cir. 2013)(holding that trademark infringement complaint "fails at the threshold" because allegations of likely confusion were "too implausible to support costly litigation").

As the *Fortres Grand* court explained, the plausibility of allegations of likelihood of confusion are measured against this Circuit's seven-factor test:

> [1] the degree of similarity between the marks in appearance and suggestion; [2] the similarity of the products for which the name is used; [3] the area and manner of concurrent use; [4] the degree of care likely to be exercised by consumers; [5] the strength [or "distinctiveness"] of the complainant's mark; [6] actual confusion; and [7] an intent on the part of the alleged infringer to palm off his products as those of another.

763 F.3d at 702 (brackets in original), *citing McGraw-Edison Co. v. Walt Disney Prods.*, 787

F.2d 1163, 1167-68 (7th Cir. 1986), *quoting Helene Curtis Indus., Inc. v. Church & Dwight Co.,*

*Inc.*, 560 F.2d 1325, 1330 (7th Cir. 1977).

      As with priority, the incontestability of MHI's registration is irrelevant to this analysis.

Section 33 of the Lanham Act provides that the presumptions flowing from incontestability

"shall be subject to proof of infringement."  Lanham Act §  33(b),  15 U.S.C. § 1115(b).  This

"places a burden of proving likelihood of confusion (that is, infringement) on the party charging

infringement even when relying on an incontestable registration.  *KP Permanent Make-Up, Inc.*

*v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).  Thus, while an incontestable registration

cuts off a challenge to the validity of the registration on grounds that the registered mark is

descriptive, *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985), it has no bearing

on the assessment of the strength of the mark for purposes of likelihood of confusion.  *See*

*Munters Corp. v. Matsui America, Inc.*, 909 F.2d 250, 252 (7th Cir. 1990)("The Supreme Court's

holding in *Park 'N Fly* does not address likelihood of confusion.  In fact the Court specifically

directed the district court to consider the likelihood of confusion argument on remand. 469 U.S.

at 205. Therefore *Park 'N Fly* does not preclude consideration of a mark's strength for purposes

of determining the likelihood of confusion.").  As the Fifth Circuit has put it, "Incontestable

status does not make a weak mark strong."  *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d

166, 171 (5th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987).

      Here, shorn of conclusory assertions of the seven likelihood of confusion factors, the

actual facts alleged in the Complaint are insufficient to support a plausible inference that

confusion is likely.

      **Strength of MHI's Mark.**  The "strength" of a trademark "refers to the mark's

8

distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 684 (7th Cir. 2001). To assess their strength, marks are categorized along a spectrum, which range from "(1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful." *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977). A descriptive mark "specifically describes a characteristic or ingredient of an article," and is inherently weak unless it is shown to have acquired secondary meaning, i.e., awareness among the relevant public. *Id.*

The Complaint provides virtually no competent factual predicate for assessing the strength of MHI's "My Health" mark. To the extent any actual use is alleged at all, it relates to "marketing and licensing [MHI's] patented technology to companies in the healthcare and technology industries," Complaint ¶ 30, which is not a consumer-related good or service at all. The phrase "My Health" has a plain English meaning, and if the mark were applied to goods or services that provide information to customers about their health, its descriptive nature is obvious.

Beyond its inherent weakness, nothing alleged in the Complaint would permit an inference that MHI's mark has ever been exposed to, let alone has gained recognition among, the public who would be exposed to GE's allegedly infringing web site. The only customers of MHI specifically mentioned in the Complaint at all are "forty healthcare and technology companies, including hospital systems, healthcare technology companies, and well-recognized telecommunications companies." Complaint ¶ 31. GE's alleged use, by contrast, is on a web site that provides information to GE employees, retirees, and their dependents, in categories such as "Staying Healthy," "Understanding Health Care Choices," "Information on Prevention," and

"Information on Benefits." *See* Enns Declaration at 4. There is no plausible basis to infer that any users of GE's site have been exposed to MHI's mark, let alone that the mark has developed any recognition among that group.

**Similarity Of The Products.** As the above discussion makes clear, despite conclusory assertions otherwise, the only facts competently alleged in the Complaint or appearing in materials that it references or that are appropriately judicial noticed by the Court show that the goods or services on which the respective marks are used are vastly different: marketing and licensing patented technology to healthcare and technology companies, in the case of MHI, versus an informational web site about healthy living and employee benefits in the case of GE.

**Similarity Between The Marks.** The Complaint acknowledges that the two uses are not identical – MHI's claimed mark is "My Health," while GE uses the term "myHealth," with no space between the words and with non-typical capitalization. In light of the weakness of MHI's mark and the differences in the respective goods and services described above, such differences are more than sufficient to enable relevant customers to distinguish the two uses, even assuming they had ever been exposed to them. *See, e.g., General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987)(when "a mark is weak," the public "can easily distinguish slight differences in the marks").

**Other Factors.** The only other factors even mentioned in the Complaint, actual confusion and the intent of the defendant, are alleged in conclusory form with no supporting facts of any kind. *See* Complaint ¶¶ 8, 42. Such "recital[s] of the elements of a cause of action" are entitled to no weight in the Rule 12(b)(6) analysis. *Vesely*, 762 F.3d at 665.

In *Fortres Grand*, the Seventh Circuit affirmed the lower court's dismissal of a trademark infringement claim pursuant to Rule 12(b)(6), reviewing the plausibility of allegations under the

seven-factor likelihood of confusion test.  Even though the respective marks were nearly identical, the court concluded, "But juxtaposed against the weakness of all the other factors, this similarity is not enough. Trademark law protects the source-denoting function of words used in conjunction with goods and services in the marketplace, not the words themselves."  763 F.3d at 705.  As in that case, here the competent factual allegations of the Complaint result in a likelihood of confusion claim that is "too implausible to support costly litigation."  *Id., quoting Eastland Music Grp.,* 707 F.3d at 871.

## II.   THE COMPLAINT FAILS TO STATE A CLAIM FOR FALSE ADVERTISING UNDER THE LANHAM ACT

Section 43(a) of the Lanham Act proscribes the use of any "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that is "likely to cause confusion," or that "misrepresents the nature, characteristics, qualities, or geographic origin" of goods, services, or commercial activities.  Lanham Act § 43(a), 15 U.S.C. § 1125(a). This language creates a federal cause of action for "traditional trademark infringement of unregistered marks," and also "goes beyond trademark protection" to prohibit false or misleading statements in advertising.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003).

Here, while the Complaint purports to assert a Section 43(a) "false advertising" claim separate from the trademark infringement claims, Complaint ¶¶ 55-60, the only "false and misleading statements" alleged anywhere in the Complaint consist of the purported use of the "myHealth" designation to "confuse consumers into thinking that My Health is the source of the goods."  *Id.* ¶ 37.  This is exactly the same conduct relied on for the trademark infringement

claims, and in such cases, Section 43(a) requires pleading[1] and proof of the same elements.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768,  (1992)("[T]he general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)," and "liability under § 43(a) requires proof of the likelihood of confusion"); *Int'l Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)("In order to prevail in its action under section 43(a) of the Lanham Act, the [plaintiff] must establish: (1) that it has a protectible trademark, and (2) a 'likelihood of confusion' as to the origin of the defendant's product.").

The Complaint therefore fails to state a claim under § 43(a) for the same reasons that it fails to state a viable infringement claim, as explained in Part II, above.

## III.      THE COMPLAINT FAILS TO STATE A CLAIM UNDER WISCONSIN STATUTORY OR COMMON LAW

The Complaint purports to assert claims for trademark infringement under Wis. Stat. § 132.033(1), and for common law trademark infringement and unfair competition.  Complaint ¶¶ 74-96.  As this Court has recognized, "The same standards that govern plaintiff's Lanham Act claims govern plaintiff's state trademark and unfair competition claims."  *Mid-West Mgmt., Inc. v. Capstar Radio Operating Co.*, 2004 U.S. Dist. LEXIS 22775, 8 (W.D. Wis. Oct. 21, 2004). These state law claims should therefore be dismissed for the reasons explained in Part II, above.

---

[1]  The Seventh Circuit has held in some circumstances that a claim under § 43(a) asserts "a form of fraud," triggering the heightened pleading requirements of Rule 9(b).  *M. Arthur Gensler Jr. & Assocs. v. Strabala, 7*64 F.3d 735, 737 (7th Cir. 2014).

## CONCLUSION

The well-pleaded facts in the Complaint do not support essential elements of liability under any of the legal theories asserted.  The Complaint should therefore be dismissed under Rule 12(b)(6).


Dated:  March 24, 2015

/s/Rodrick J. Enns
*Admitted pro hac vice*
ENNS & ARCHER LLP
939 Burke Street
Winston-Salem, NC 27101
Telephone: (336) 723-5180
Facsimile: (336) 723-5181
renns@ennsandarcher.com

Beth J. Kushner, SBN 1008591
Kelly J. Noyes, SBN 1064809
von BRIESEN & ROPER, S.C.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI   53202
Phone:  (414) 287-1373 (Kushner Direct)
Phone:  (414) 287-1522 (Noyes Direct)
Fax:     (414) 276-6281
bkushner@vonbriesen.com
knoyes@vonbriesen.com

Attorneys for Defendant General Electric
Company

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this date I have electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system which will send electronic notification of such

filing to the following counsel of record:

Mark M. Leitner
<u>mleitner@padrm.com</u>

Joseph S. Goode
<u>jgoode@padrm.com</u>

Jessica L. Farley
<u>jfarley@padrm.com</u>

Dated:  March 24, 2015
                             <u>/s/Rodrick J. Enns</u>
                             Rodrick J. Enns
                             ENNS & ARCHER LLP
                             939 Burke Street
                             Winston-Salem, NC 27101
                             Telephone: (336) 723-5180
                             Facsimile: (336) 723-5181
                             <u>renns@ennsandarcher.com</u>

                             Beth J. Kushner, SBN 1008591
                             Kelly J. Noyes, SBN 1064809
                             von BRIESEN & ROPER, S.C.
                             411 East Wisconsin Avenue, Suite 1000
                             Milwaukee, WI   53202
                             Phone:  (414) 287-1373 (Kushner Direct)
                             Phone:  (414) 287-1522 (Noyes Direct)
                             Fax:     (414) 276-6281
                             <u>bkushner@vonbriesen.com</u>
                             <u>knoyes@vonbriesen.com</u>

                             Attorneys for Defendant General Electric
                             Company